IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FRED HUTCHINSON CANCER
RESEARCH CENTER; ARGUS
GENETICS, LLC; AND MARS, INC.,

Plaintiffs,

v.  CIVIL ACTION NO. 2:10cv616

BIOPET VET LAB, INC.; AND RADIO
SYSTEMS CORPORATION D/B/A
PETSAFE,

Defendants.

## *MEMORANDUM OPINION AND ORDER*

Before the Court is Plaintiffs', Fred Hutchinson Cancer Research Center ("FHCRC"), Argus Genetics, LLC ("Argus"), and Mars, Inc. ("Mars"), (collectively, "Plaintiffs"), Motion to Dismiss Counts III and VI of Defendant BioPet Vet Lab, Inc.'s ("BioPet") Amended Counterclaim and Counts III and V of Defendant Radio System Corporation's ("PetSafe") Amended Counterclaim, pursuant to Federal Rule of Civil Procedure 12(b)(6). Also before the Court is Plaintiffs' Motion to Strike Defendants' affirmative defenses of fraud and inequitable conduct, pursuant to Federal Rule of Civil Procedure 12(f). The Parties have fully briefed this matter and it is now ripe for judicial determination. For the reasons stated herein, Plaintiffs' Motions are **GRANTED**.

### I. FACTUAL AND PROCEDURAL HISTORY

On December 17, 2010, Plaintiffs filed a Complaint in this Court against BioPet Vet Lab, Inc., alleging that Defendant had infringed and was currently infringing "one or more of the

1

claims of the '863 patent by using, selling and offering to sell the dog breed identification services associated with its DNA Breed Identification Kit product." Compl. ¶ 14. On January 31, 2011, upon learning that another company planned to market BioPet's product at an upcoming veterinary conference, Plaintiff filed an Amended Complaint naming Radio Systems Corp. d/b/a/ PetSafe as a co-defendant in the case. Am. Compl. ¶¶ 5, 18. On February 9, 2011, BioPet filed an Answer and Counterclaim alleging that FHCRC submitted false oaths that the United States Patent Office relied on in issuing the '863 patent and requesting declaratory judgments on the grounds of invaldity, non-infringement, and unenforceability, among other claims.

On February 25, 2011, Plaintiffs filed a Motion to Dismiss Defendants' Counterclaims III, V, and VI (Dkt. No. 50) and to Strike Affirmative Defenses of Fraud and Inequitable Conduct (Dkt. No. 52). After responding to the motion on February 28, 1011, Defendants filed an Amended Answer to the First Amended Complaint and an Amended Courterclaim against Plaintiffs on March 10, 2011. On March 28, 2011, Plaintiffs then withdrew the Motion to Dismiss and Motion to Strike and filed a Motion to Dismiss Amended Counterclaims (Dkt. No. 85) as well as a Motion to Strike Amended Answer to Complaint and Counterclaim (Dkt. No. 87) and memoranda in support of both motions. Defendants filed an Opposition to the Motion to Dismiss Amended Counterclaims and an Opposition to the Motion to Strike Amended Answer to Complaint and Counterclaim on May 11, 2011. Plaintiffs filed a reply to both opposition filings on May 18, 2011 and requested a hearing on both motions. Accordingly, this matter is now ripe for judicial determination.

claims of the '863 patent by using, selling and offering to sell the dog breed identification services associated with its DNA Breed Identification Kit product." Compl. ¶ 14. On January 31, 2011, upon learning that another company planned to market BioPet's product at an upcoming veterinary conference, Plaintiff filed an Amended Complaint naming Radio Systems Corp. d/b/a/ PetSafe as a co-defendant in the case. Am. Compl. ¶¶ 5, 18. On February 9, 2011, BioPet filed an Answer and Counterclaim alleging that FHCRC submitted false oaths that the United States Patent Office relied on in issuing the '863 patent and requesting declaratory judgments on the grounds of invaldity, non-infringement, and unenforceability, among other claims.

On February 25, 2011, Plaintiffs filed a Motion to Dismiss Defendants' Counterclaims III, V, and VI (Dkt. No. 50) and to Strike Affirmative Defenses of Fraud and Inequitable Conduct (Dkt. No. 52). After responding to the motion on February 28, 1011, Defendants filed an Amended Answer to the First Amended Complaint and an Amended Courterclaim against Plaintiffs on March 10, 2011. On March 28, 2011, Plaintiffs then withdrew the Motion to Dismiss and Motion to Strike and filed a Motion to Dismiss Amended Counterclaims (Dkt. No. 85) as well as a Motion to Strike Amended Answer to Complaint and Counterclaim (Dkt. No. 87) and memoranda in support of both motions. Defendants filed an Opposition to the Motion to Dismiss Amended Counterclaims and an Opposition to the Motion to Strike Amended Answer to Complaint and Counterclaim on May 11, 2011. Plaintiffs filed a reply to both opposition filings on May 18, 2011 and requested a hearing on both motions. Accordingly, this matter is now ripe for judicial determination.

## II. LEGAL STANDARD

### A. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. For purposes of a Rule 12(b)(6) motion, courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). Courts will favorably construe the allegations of the complainant and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). A complaint need not contain "detailed factual allegations" in order to survive a motion to dismiss, but the complaint must incorporate "enough facts to state a belief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). This plausibility standard does not equate to a probability requirement, but it entails more than a mere possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949, and *Twombly*, 550 U.S. at 557).

### B. Motion to Strike Pursuant to Fed. R. Civ. P. 12(f)

Federal Rule of Civil Procedure 12(f) allows a district court, acting either on its own or on motion made by a party, to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Whether to grant a motion to strike under Rule 12(f) is within the sound discretion of the district court. *See GTSI Corp. v. Wildflower Int'l, Inc.*, No. 1:09CV123, 2009 WL 2160451, at *4 (E.D. Va. July 17, 2009). However, motions under Rule 12(f) are generally disfavored "because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1380 (2d ed.1990)). Notwithstanding, "a defense that might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action can and should be deleted." *Id.*

### III. DISCUSSION

#### A. Motion to Dismiss Counts III and VI of BioPet's Amended Counterclaim

In BioPet's Amended Answer and Counterclaims to Plaintiffs' First Amended Complaint, BioPet alleges that the '863 patent is unenforceable based on fraud, inequitable conduct, and/or violation of the duty of disclosure. BioPet's Am. Answer to Pls.' First Am. Compl. ¶ 41. In Count III, BioPet claims inequitable conduct on the grounds that that the applicants of the '863 patent, particularly patent inventors Elaine Ostrander and Leonid Kruglak, were aware of prior art publications that anticipated the patent and supported a finding of obviousness when they signed the oath for the patent and/or during the time where they had a duty to disclose any changes under the oath. *Id.* ¶¶ 14, 24, 29; *see* 37 C.F.R. § 1.56(a) ("each individual associated

with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [U.S.P.T.O.], which includes a duty to disclose to the [U.S.P.T.O.] all information known to that individual to be material to patentability.").

Plaintiffs assert that BioPet failed to sufficiently plead inequitable conduct as to the '863 patent under Rule 9(b) of the Federal Rules of Civil Procedure. Specifically, they assert that BioPet failed to sufficiently plead the following: that material prior art was withheld; sufficient knowledge of the allegedly material prior art; and that such alleged material prior art was withheld with an intent to deceive the Patent and Trademark Office (hereinafter "PTO"). A district court evaluating the sufficiency of a pleading alleging inequitable conduct shall apply the law of the United States Court of Appeals for the Federal Circuit ("Federal Circuit"), rather than the law of the regional circuit court. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). Because a claim of inequitable conduct is akin to a claim of fraud, all claims of inequitable conduct must meet the particularly requirements of Federal Rule of Civil Procedure 9(b). *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003) ("[I]nequitable conduct, while a broader concept than fraud, must be pled with particularity."). Under Rule 9(b), inequitable conduct is pleaded with the requisite "particularity" only when the pleading identifies "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1328. Furthermore, "a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual

5

(1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328-29.

In this case, BioPet identifies Drs. Elaine Ostrander and Leonid Kruglak as the "who" by indicating that they failed to disclose material prior art publications as required by their oath to the PTO. Specifically, BioPet alleges that Ostrander was "familiar with the material aspects of the content of" the following publications: Randi et al., *Detecting rare introgression of domestic dog genes into wild wolf (canis lupus) populations by Bayesian admixture analyses of microsatellite variations* (2002); Vila et al., *Combined use of maternal, paternal, and bi-parental genetic markers for the identification of wolf-dog hybrids* (2003); Rosenberg et al., *Genetic structure of human populations* (2002); and Turakulov et al., *Number of SNPS loci needed to detect population structure* (2003). BioPet's Amended Answer to Pls.' First Am. Compl. ¶ 14. BioPet further alleges that Kruglyak "was aware of a prior art publication [supporting] a finding of obviousness, namely, Rosenberg et al., *Genetic structure of human populations* (2002). BioPet's Amended Answer to Pls.' First Am. Compl. ¶ 24. Thus, the Court finds that BioPet's pleading sufficiently satisfies the "who" prong of *Exergen*. *See Exergen*, 575 F.3d at 1329; *see also* 37 C.F.R. § 1.56(a) ("Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [PTO] ...."). However, BioPet's cursury allegations that the inventors were aware of the material aspects of the alleged prior art based on citations to those works in unrelated publications fails to meet the standards for establishing the "what," "where" and "how" of the material omission. *See* BioPet's Amended Answer to Pls.' First Am. Compl. ¶¶ 15-18 and 24-26. In order to satisfy this standard, the

pleading must set forth "which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found" as well as "the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record." *Exergen*, 575 F.3d at 1329. BioPet fails to make either showing, as the pleading does not identify the particular claims of the '863 patent to which alleged prior art publications would be relevant, nor does it indicate where within those references the material information may be found. BioPet's assertion that "the named inventor[s'] own publications [which cite various parts of the alleged prior art publications]" is too vague to satisfy the heightened pleading requirements of Rule 9(b).[1]

In light of the factual deficiencies in BioPet's counterclaim, the Court need not evaluate the sufficiency of BioPet's allegations of intent to deceive the PTO in order to dispose of Plaintiffs' Motion as it relates to inequitable conduct. *See Exergen*, 575 F.3d at 1328-29 (indicating that parties must allege facts that would give rise to a reasonable inference that "a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO"). Notwithstanding, the Court concludes that BioPet has failed to provide factual allegations that would prove by clear and convincing evidence that the co-applicants, Drs.

---

[1] Defendants BioPet and PetSafe request leave to amend their respective Amended Answers and Counterclaims in order to more specifically allege fraud and inequitable conduct. Defts.' Opp. to Pls.'s Mot. to Dismiss and to Strike at 11. In light of the fact that Defendants have already amended their respective answers and counterclaims to better conform to the heightened pleading standards, the Court finds that permitting any further amendment would be futile. Defendants were on notice of any potential factual deficiencies in their pleading once Plaintiff filed its initial Motion to Dismiss on February 25, 2011 and have yet to cure the factual deficiencies. Therefore, the Court believes that any further leave to amend would be similarly futile and leave is **DENIED**.

Ostrander and Kruglyak, "knew of the reference, knew that it was material, *and* made a deliberate decision to withhold it." *Therasense, Inc. V Becton, Dickinson and Co.*, __F.3d__, 2011 WL 2028255, at *9-10 (C.A.Fed. May 25, 2011) (emphasis added). BioPet alleges,

> "[b]ecause the market for DNA Dog Breed ID products is worth millions of dollars per year, and because Ostrander [and Kruglyak] had knowledge of the undisclosed prior art publications, and because evidence supports Ostrander's [and Kruglyak's] knowledge of the materiality of content of said prior art, coupled with her not disclosing this prior art, upon information and belief, co-inventor's Ostrander's [and Kruglyak's] oath[s] submitted to the PTO [were] submitted with Ostrander's [and Kruglyak's] specific intent to deceive the PTO."

*See* BioPet's Amended Answer to Pls.' First Am. Compl. ¶¶ 19, 27. However, these allegations merely invite speculation about specific intent rather than alleging any facts pertaining to knowledge of the reference and its materiality along with a deliberate decision to withhold it. Therefore, BioPet's pleading lacks the specificity required under Rule 9(b) as to the specific intent element of inequitable conduct.

BioPet has not identified how the alleged prior art materially relates to any a specific claim in the patent. It has not shown where in the alleged prior art such material references occur, nor has it provided an explanation of how such information would have been useful to the patent examiner. Furthermore, BioPet has not alleged any facts indicating that the co-inventors knew of a material reference and made a *deliberate decision* to withhold it. Therefore, BioPet's counterclaim for inequitable conduct fails to meet the pleading standards required by Rule 9(b).

BioPet also fails to allege fraud with the required particularity. BioPet alleges that Fred Hutchinson Cancer Research Center ("FHCRC") and Argus Genetics, LLC committed fraud based on the conduct of its agents, Drs. Otrander and Kruglyak. BioPet further asserts that the

8

facts alleged in the general allegations of the counterclaims are those which support its claim of fraud. Defts.' Opp. To Pls.'s Mot. to Dismiss and to Strike at 1. Upon reviewing the general allegations asserted in BioPet's Amended Answer and Counterclaims, the Court finds that BioPet's fraud claim and underlying facts simply reassert the inequitable conduct claim. Consequently, for the reasons outlined above, Count VI of BioPet's Counterclaims also fails to meet the pleading standards outlined in Rule 9(b). Thus, Plaintiffs' Motion to Dismiss Counts III and VI of BioPet's Counterclaims to Plaintiffs' First Amended Complaint pursuant to Rule 12(b)(6) is **GRANTED**.

### B. Motion to Dismiss Counts III and V of Petsafe's Amended Counterclaim

PetSafe has also filed an Amended Answer and Counterclaims to Plaintiffs' First Amended Answer. In it, PetSafe asserts the same general allegations as BioPet as a factual basis for its counterclaims. *See* PetSafe's First Am. Answer and Countercl. at §§ 7-33. In Counts III and V of its counterclaims, PetSafe uses the exact same language BioPet articulated to allege inequitable conduct and fraud, respectively. Therefore, for the reasons stated above, Plaintiff's Motion to Dismiss Counts III and V of PetSafe's Counterclaims to Plaintiffs' First Amended Complaint pursuant to Rule 12(b)(6) is **GRANTED**.

### C. Motion to Strike Defendants' Affirmative Defenses of Fraud and Inequitable Conduct

Finally, Plaintiffs' have moved to strike both BioPet's and PetSafe's affirmative defenses which provide that all claims of the '863 patent are unenforceable and/or invalid based on fraud and inequitable conduct. *See* BioPet's First Am. Answer and Countercl., Affirmative Defense E; *See* PetSafe's First Am. Answer and Countercl., Affirmative Defense E. A defense that "would

not, under the facts alleged, constitute a valid defense to the action can and should be deleted." *Waste Mgmt. Holdings*, 252 F.3d at 347. Accordingly, for the reasons stated above, the Court strikes Defendants' Affirmative Defense E which alleges inequitable conduct and fraud. Thus, Plaintiffs' Motion to Strike Plaintiff's Affirmative Defenses of fraud and inequitable conduct pursuant to Rule 12(f) is **GRANTED**.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs' Motion to Strike Defendants' Affirmative Defenses of Inequitable Conduct and Fraud, pursuant to Federal Rules of Civil Procedure 12(f) is **GRANTED**. Plaintiffs' Motion to Dismiss Counts III and VI of BioPet's Amended Counterclaims and Counts III and V of PetSafe's Amended Counterclaims is **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel and parties of record.

**IT IS SO ORDERED.**

/s/
Raymond A. Jackson
United States District Judge

Norfolk, Virginia
June 27, 2011